IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEORGETTE M. BRADY, Individually and as Executrix of the Estate of David V. Brady,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| v. | NO.  15-4099 |
| **AIRGAS, INC.,** | |
| **Defendant.** | |

DuBois, J.                                                                                                   October 30, 2015

**M E M O R A N D U M**

### I. INTRODUCTION

This case arises out of the provision of group life insurance benefits by defendant Airgas, Inc., ("Airgas") to its former employee, David V. Brady. Presently before the Court is Airgas's Motion to Dismiss the Complaint for Failure to State a Claim on which Relief May Be Granted, filed September 24, 2015. For the reasons set forth below, defendant's Motion is denied.

### II. BACKGROUND

The facts of this case as set forth in plaintiff's Complaint and attached exhibits are as follows. Airgas is a Delaware corporation with offices in Radnor, Pennsylvania. Compl. ¶ 2. David V. Brady was employed by Airgas in Radnor for 22 years. Compl. ¶ 5. David Brady died on March 30, 2014. Compl. ¶ 19. Plaintiff in this case, Georgette M. Brady, is David Brady's widow and the Executrix of his estate. Compl. ¶ 1.

While employed at Airgas, David Brady enrolled in a group life insurance plan provided by Airgas. Compl. ¶ 7. Under the life insurance plan, David Brady had basic insurance coverage of $50,000 on his life, without premiums, and additional optional coverage of $336,000 on his life, for which he paid premiums. Compl. ¶ 8. Plaintiff Georgette Brady was the beneficiary of

both life insurance policies. Compl. ¶ 9. Plaintiff alleges that David Brady never received summary plan descriptions of the life insurance plans from Airgas or the insurance company which serviced the plans for Airgas. Compl. ¶ 11.

Airgas terminated David Brady's employment effective August 13, 2012. Compl. ¶ 5. David Brady was notified of termination by letter dated August 13, 2012, from Nona M. Robinson, a Human Resources Manager at Airgas. Compl. ¶ 5. The termination letter provided, *inter alia*:

> Your insurance coverage for medical, dental, life, accidental death and dismemberment[,] life insurance, 401(k), Employee Stock Purchase Program[,] and all applicable benefit options and elections, which have been provided by the company will end on August 27, 2012 since you are being paid two (2) weeks in lieu of notice. Further details are below:
>
> Life Insurance – YBR™ will be sending you paperwork for life insurance portability and conversion. For additional information, please contact YBR™ at (877) 847-2436.

Compl. Ex. A.

Subsequently, David Brady received two notices, both dated September 10, 2012, from Airgas's benefits administrator regarding his life insurance policies. Compl. ¶ 13. The first notice was titled "Conversion Notice" and was a single page, printed on both sides. Compl. ¶ 13; Ex. C. Printed on the front side of the notice was the following explanation:

> This notice provides the necessary plan information you'll need if you want to convert your benefit coverage to a personal policy directly with the insurance company. Generally, you must apply for conversion within 31 days of when your coverage was reduced or terminated. Contact the insurance company directly for more information on your conversion option and corresponding cost.

Compl. Ex. C. Below this explanation was a Florida mailing address and toll-free number for Airgas. Compl. Ex. C. On the reverse side of the notice, below the title "Basic Life Insurance," was a description of David Brady's benefits, which provided, *inter alia*: the insurance company

name, Aetna Life; a toll-free telephone number for the insurance company; the active coverage amount, $50,000; the "earliest coverage begin date," "01-01-2008"; and the "coverage end date," "08-13-2012." Compl. Ex. C. Below this plan description was the following paragraph, under the heading "For More Information":

> If you need more information or want to obtain application forms, please visit the insurance company's Web site or call the phone number above. If you decide to complete an application, you must include a copy of this Conversion Notice with your completed application. This form will serve as the employer portion of the application.

Compl. Ex. C.

The second notice was titled "Portability/Conversion Notice." Compl. Ex. B. A substantially similar explanation to the first notice was printed on the front side of the second notice:

> This notice provides the necessary plan information you'll need if you want to continue your benefit coverage directly with the insurance company. Generally, you must apply for continuation within 31 days of when your coverage was terminated. Contact the insurance company directly for more information on your continuation option and corresponding cost.

Compl. Ex. B. On the reverse side of the notice was a description of David Brady's benefits, under the title "Optional Life Insurance," which provided, *inter alia*: the insurance company name, "Aetna Life"; a toll-free telephone number for the insurance company; the active coverage amount, $336,000; the "earliest coverage begin date," "01-01-2008"; and the "coverage end date," "08-13-2012." Compl. Ex. B. Below this plan description was the same "For More Information" paragraph included in the first notice. Compl. Ex. B.

Following his termination, David Brady also received notices regarding his right to continue his health insurance benefits after termination pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Compl. ¶ 17. He elected to continue his health

insurance benefits following his termination. *Id.* However, he did not exercise his option to convert his group life insurance policies to individual policies. Compl. ¶ 18.

David Brady had been chronically ill in the years prior to the termination of his employment with Airgas and underwent cancer treatment and several surgeries. Compl. ¶ 5. His health continued to deteriorate after termination of his employment and he died on March 30, 2014. Compl. ¶ 19.

Following his death, plaintiff, Georgette Brady, obtained counsel and subsequently, on July 24, 2015, filed a Complaint in this Court, naming Airgas as the sole defendant. The sole claim in the complaint is that Airgas breached its fiduciary duty to David Brady under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*, by failing to provide adequate notice of Brady's right to convert his group life insurance to individual policies. Compl. ¶¶ 38-41. Plaintiff's Complaint seeks an equitable award of surcharge in the full amount of the life insurance policies pursuant to 29 U.S.C. § 1132(a)(3)(B). This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), which grants exclusive jurisdiction to the district courts of the United States over claims brought pursuant to 29 U.S.C. § 1132(a)(3)(B).

On September 24, 2015, Airgas filed the instant Motion to Dismiss the Complaint for Failure to State a Claim on which Relief May Be Granted. For the following reasons, the Court denies the Motion.

### III. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  To survive a motion to dismiss, a plaintiff must allege facts that "'raise a

right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief.  *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

In this case, the sole claim in plaintiff's Complaint alleges that defendant violated ERISA by breaching the fiduciary duty owed to plaintiff as a beneficiary. ERISA imposes fiduciary duties on administrators of employee benefit plans covered by the statute. 29 U.S.C. §§ 1101, 1104. ERISA requires that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B). "Although the statute articulates a number of fiduciary duties, it is not exhaustive. Rather, Congress relied upon the common law of trusts to define the general scope of trustees' and other fiduciaries' authority and responsibility." *In re Unisys Corp. Retiree*

*Medical Benefits ERISA Litigation*, 579 F.3d 220, 227 (3d Cir. 2009) (citations omitted). An ERISA fiduciary "may not, in the performance of its duties, materially mislead those to whom the duties of loyalty and prudence are owed." *Id.* at 228 (citations omitted). "The responsibility encompasses not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* (citations omitted).

A beneficiary may bring an action pursuant to 29 U.S.C. § 1132(a)(3) against the plan administrator for breach of fiduciary duty. "To establish such a breach, a plaintiff must demonstrate: (1) that defendant was 'acting in a fiduciary capacity'; (2) the defendant made 'affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries'; (3) the misrepresentations or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *Id.* A claim brought pursuant to § 1132(a)(3) does not require a showing of bad faith, but "merely requires a violation of ERISA." *Leckey v. Stefano*, 501 F.3d 212, 229 (3d Cir. 2007).

The parties do not dispute that Airgas was "acting in a fiduciary capacity" when it sent the notices at issue in this case. *See, e.g.*, Memorandum of Law in Support of the Defendant's Motion to Dismiss, at 7. "A plan administrator acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees." *Unisys*, 579 F.3d at 228. Following his termination, David Brady had a right under ERISA to continuation coverage. 29 U.S.C. § 1162. Airgas had a duty to adequately inform David Brady of his right to convert his policy following termination of his employment.

The Court now turns to the scope of Airgas's duty in this case. As the Court of Appeals for the Third Circuit has explained, the second element of the breach of fiduciary duty test, whether Airgas made "affirmative misrepresentations or failed to adequately inform" Brady of

6

his right to convert, "is best understood when viewed in conjunction with the third element, which requires that the misrepresentation or omission is material." *Unisys*, 579 F.3d at 228. "A misleading statement or omission by a fiduciary is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." *Id.* (citations omitted). "[E]stablishing a fiduciary's liability as a result of inadequately disclosed information may involve an inquiry into the employer's knowledge of an employee's knowledge and understanding, in order to determine if the employer was aware of the confusion generated by its silence." *Id.* (citations omitted). Materiality is a mixed question of law and fact and judgment as a matter of law on the question of materiality is appropriate only if "reasonable minds cannot differ." *Hendrian v. AstraZeneca Pharmaceuticals LP*, No. 13-cv-775, 2015 WL 404533 (M.D. Pa. Jan. 29, 2015) (citing *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993).

In this case, it is premature to dismiss plaintiff's claim for breach of ERISA fiduciary duty. Plaintiff's complaint alleges that the conversion notices sent to David Brady were inadequate because they "do not even reference life insurance on the face page and bear no indication that such page is one of two, or that there is a reverse side" and "do not present the eligibility or terms for conversion, nor the forms or 'paperwork' related thereto." Compl. ¶ 41. For purposes of the instant Motion to Dismiss, the Court takes as true plaintiff's allegation that David Brady never received the summary plan descriptions for the life insurance plans and that the only relevant notices are the termination letter and the two conversion notices. Based on these documents alone, plaintiff has alleged sufficient facts, taken as true, to present a plausible claim that there is a substantial likelihood of confusion for a reasonable employee making a retirement decision.

Defendant's motion essentially asks the Court to weigh the evidence in this case and determine that plaintiff's claim must fail because no reasonable factfinder could find the notices to be inadequate, even in the absence of any other documentation. Memorandum of Law in Support of the Defendant's Motion to Dismiss, at 7-9. In ruling on the instant Motion to Dismiss, the Court does not reach the issue of whether, as a matter of law, "reasonable minds cannot differ" on the conclusion that the notices were adequate. *See Campbell v. CIGNA Group Ins.*, No. 12-cv-443, 2012 WL 2403396 at *5 (W.D. Pa. June 26, 2012) (contrasting in an ERISA fiduciary duty case the standard for summary judgment with the "less stringent standard for plaintiff answering a 12(b)(6) motion to dismiss"). Defendant does not cite any case in which a district court has granted a Rule 12(b)(6) motion for failure to state a claim in an ERISA fiduciary duty case based on a failure to adequately plead a material misstatement or omission in notifications to a beneficiary. In deciding the instant Motion to Dismiss, the Court assesses whether the allegations in the Complaint, taken as true, state a claim under the law, not whether the undeveloped evidentiary record is sufficient to prove that claim. The Court concludes plaintiff has adequately pled the second and third element of the breach of fiduciary duty claim.

On the fourth element, plaintiff alleges that David Brady detrimentally relied on the inadequate notices by failing to exercise his ERISA right to convert the policies. Compl. ¶ 18, 20. Defendant does not dispute David Brady failed to convert the policy following receipt of the conversion notices. David Brady's subjective motivation, if any, for failing to renew the policy is a fact issue inappropriate for resolution in the instant Motion. Plaintiff has alleged sufficient facts, taken as true, to satisfy the fourth element of the claim.

**V.     CONCLUSION**

For the foregoing reasons, the Court denies defendant Airgas's Motion to Dismiss. An appropriate order follows.